THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **DEBORAH C. COLLIER,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | Civil Action |
| : | No. 5:04-cv-297 (CAR) |
| **AMERICAN INTERNATIONAL** : | |
| **MOVERS, INC., a Subsidiary of** : | |
| **HI-BOY GROUP, INC., and** : | |
| **NED GLOBAL, Individually and in his** : | |
| **Capacity as General Manager,** : | |
| : | |
| **Defendants.** : | |
| _____ : | |

## ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants American International Movers, Inc. ("American International") and Ned Goble ("Goble")[1] have moved the Court to enter summary judgment in their favor. In this case, Plaintiff contends that her employment with American Internation was terminated as a result of racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., and 42 U.S.C. § 1981. Plaintiff further pleads that she experienced sexual harassment during her employment, and states a number of State law claims. Upon review of the evidence in the record of the case, the arguments of counsel, and the relevant legal authorities, the Court finds that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law. Accordingly, the motions for summary judgment (Docs. 20, 22) are hereby **GRANTED**.

---

[1] Goble is misidentified in the caption of the case as "Ned Global."

1

On motion for summary judgment, the moving party bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The burden then shifts to the non-moving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e),(c)).

In this case, Plaintiff has made no response to Defendants' motions for summary judgment. Nevertheless, the Court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." United States v. One Piece of Real Property located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004). The Court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." Id. In its consideration of the present motion for summary judgment, the Court has reviewed all evidentiary materials submitted in connection with the motion or otherwise on record before the Court, and construes all facts in the light most favorable to the Plaintiff.

**1.      Factual Background**

Plaintiff was hired to work at American International in Augusta, Georgia, on March 18, 2002, and discharged on September 24, 2002. American International provides moving and storage services for individuals and corporations. Plaintiff came to American International in response to a classified advertisement, with the understanding that she was applying for a position as a

receptionist. She later learned that the position with American International was broader and that she would be required to perform the duties of an administrative assistant, including duties related to scheduling and billing.

Plaintiff was initially hired to work on a ninety-day probationary basis. At the end of the first ninety-day period, her probationary status was extended for an additional ninety days, despite the recommendation of the company's general manager, Defendant Goble, that she be discharged. After the second probationary period she was discharged. On the separation notice Goble wrote that Plaintiff was

> terminated for not performing her job, unable to follow orders, rules, and instructions from her supervisor, extremely [too] many mistakes and errors, which cost our company several thousand dollars. She just could not grasp or learn the job we hired her for, after given an additional ninety days.

Doc. 33, Memorandum in Support of Motion for Summary Judgment, Ex. A.

On October 29, 2002, Plaintiff filed a charge of discrimination with the Augusta/Richmond County Human Relations Board. In the space for "Cause of Discrimination" Plaintiff marked only the box labeled "Race." For the "Particulars" of her claim Plaintiff stated, "I believe that I have been discriminated by being discharged in violation of Title VII of the Civil Rights Act of 1964, as amended, because of my race, Black." Doc. 33, Memorandum in Support of Motion for Summary Judgment, Ex. C. There is no mention of sexual harassment or retaliation in the charge. After receiving a Determination from the Human Relations Board on February 16, 2004, Plaintiff filed the instant lawsuit on September 15, 2004.

**2.      Race Discrimination Claims**

The record before the Court presents insufficient evidence to create a genuine issue of material fact with regard to Plaintiff's claims of race discrimination under Title VII and Section

1981. Because there is no direct evidence of discrimination in the record, Plaintiff's claims must be evaluated within the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) and <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).[2] That framework places the initial burden on the plaintiff to make a prima facie showing of discrimination. This prima facie showing creates a presumption of discrimination, which a defendant may rebut by producing legitimate non-discriminatory reasons for the contested employment decision. If the defendant meets this burden, the final burden shifts to the plaintiff to produce evidence to show that the reasons proffered by the defendant were a pretext to disguise discriminatory intent. In this case, Plaintiff's evidence fails to state a prima facie case of discrimination and fails to present a question of pretext sufficient to merit trial.

There are two possible means by which Plaintiff might have created a prima facie case. First, she might have shown that she was discharged and replaced by a person outside her protected class. <u>Cuddeback v. Florida Bd. of Education</u>, 381 F.3d 1230 (11th Cir. 2004). Second, she might have shown that similarly situated employees outside her protected class received more favorable treatment. See <u>Rice-Lamar v. City of Ft. Lauderdale</u>, 232 F.3d 836 (11th Cir. 2000). Neither method of establishing a prima facie case is supported by the record.

As to the first method, there are no specific facts in the record which can create a genuine issue of material fact as to whether Plaintiff was replaced by a person outside her protected class. Plaintiff suggests in her deposition testimony that Goble intended to fire her so that he could re-hire a white woman named Michelle who had previously worked at American International. Plaintiff's testimony does not reveal any personal knowledge that American International did in fact hire

---

[2]Title VII and Section 1981 "have the same requirements of proof and use the same analytical framework." <u>Standard v. A.B.E.L. Servs., Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998).

Michelle, however, and there is no evidence in the record before this Court to indicate who, if anyone, filled Plaintiff's position after her discharge.

As to the second method, there is no evidence of any similarly situated employees outside her protected class who received more favorable treatment. Plaintiff indicates in her deposition that another employee, Diane White, was hired at the same time she was, possibly for a similar position. It is not clear from Plaintiff's testimony what race Ms. White belonged to. Ms. White quit after approximately a week on the job. Plaintiff also refers in her testimony to a white woman named Charla who worked "in the back office." Charla's actual position is unspecified, though Plaintiff's testimony suggests that Charla worked directly with Goble. Plaintiff suggests that Goble was more responsive to Charla and that Charla had an easier time obtaining office supplies. This is not sufficient evidence to permit a reasonable finding that Charla was similarly situated to Plaintiff and received more favorable treatment in similar circumstances.

Defendants have proffered legitimate, non-discriminatory reasons for the termination of Plaintiff's employment. In his affidavit, Goble testifies that Plaintiff was an extremely unsatisfactory employee from the beginning and was ultimately terminated for poor performance and a bad attitude. As an example of this poor performance, Goble states that Plaintiff failed to respond to her training. At the beginning of her employment, Plaintiff was sent to American International's Forsyth, Georgia, headquarters for two one-week training sessions. In addition, she was assigned to Eva Howard for on-the-job training. Later, Goble decided to assign Renee Hood to provide additional training because Plaintiff appeared not to grasp the training provided by Ms. Howard. Plaintiff complained to Goble that Ms. Howard was not training her properly.

Goble further testifies that Plaintiff frequently left work early and refused to report to him, insisting that she reported only to William Lowe.  He also testifies that Plaintiff made frequent clerical errors, such as failing to schedule jobs in the books, with the result that pick-ups and deliveries were missed.  Finally, in September of 2002, Goble discovered a substantial number of unprocessed bills, resulting in a revenue shortfall for the company of several thousand dollars.  Eva Howard was primarily responsible for processing these bills, with the assistance of Plaintiff.  Both Ms. Howard and Plaintiff were fired.  Goble testifies that when he confronted Plaintiff about the unprocessed bills, she stated that she was only hired to be a receptionist and that processing bills was not her job.

Because Defendants have proffered legitimate non-discriminatory reasons for the decision to discharge Plaintiff, the burden shifts to Plaintiff to show that these reasons were a pretext for discrimination.  The record before the Court is insufficient to support a finding of pretext.  A Title VII plaintiff may demonstrate pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Texas Department of Community Affairs v. Burdine, 450 U.S. at 255.  Although she has not responded to the motion for summary judgment, Plaintiff's deposition and complaint suggest that she would attempt to show pretext by a general denial that her performance was poor and by reference to alleged racially-oriented statements of Goble.

The record fails to support a finding that Defendants' proffered explanation for the decision to discharge Plaintiff is unworthy of credence.  Indeed, Plaintiff's own deposition testimony is generally consistent with the events described in Goble's affidavit, only cast in a slightly more self-serving light.  Plaintiff's testimony confirms, for example, Mr Goble's testimony that Plaintiff failed

to grasp her job duties and had difficulty responding to training. Plaintiff acknowledges that when she took the job, she thought that she was "supposed to have been hired on as a receptionist, and then after being hired, somewhere in between, it went from receptionist to administrative assistant." Collier Dep., p. 25.  She also acknowledges that she found her training with Eva Howard to be "difficult," contending that she felt Ms. Howard was threatened by her presence and made it "difficult to learn." Id., p. 48.  She complained to Goble and other managers about Ms. Howard's training and found it "very difficult to grasp things working with somebody, you know, who resented having you there." Id., p. 49.

Plaintiff also admits, or nearly admits, to several of the specific errors enumerated by Mr.Goble.  In an angry letter written to Goble after her discharge, Plaintiff admits that Goble had counseled her during her employment with regard to "minor mishaps here and there." Collier Dep., Ex. 1. In her deposition she describes those "minor mishaps:"

> [I]t would be something like if you put in too many – if you set up too many moves for one day or something like that, then he may have say, instead of putting that move in for the 15th, you should have put it in on the 16th or something like that, or did I get a copy of – because you're supposed to make copies of everything.  Did I get a copy of that particular move or, you know, whatever have you.  It was just – it was minor things.  It was never a major, major thing.

Collier Dep., p. 52.  She does acknowledge at least one costly error, in which she sent an overseas shipment to the wrong location, resulting in a $3,000 loss to the company.  Collier Dep., p. 53.  She dismisses this, too, as a routine mistake and states that she was not formally reprimanded for it. Plaintiff's description of her "minor mishaps" is consistent with Goble's testimony that Plaintiff made frequent clerical errors, particularly with regard to the scheduling of pick-ups and deliveries

Plaintiff's testimony is also consistent with Goble's testimony that Plaintiff frequently left work early and refused to report to him.  Goble testifies in his affidavit:

> During the course of her employment, Ms. Collier failed or refused to follow company rules and instructions. She would often leave work early without notifying me and repeatedly told me that she did not have to report to me but only to our Sales Manager William Lowe. I repeatedly made clear to her that she was required to report to me, but she continued to disregard my instructions.

Goble Aff., Doc. 25, ¶ 8. Consistent with this characterization, Plaintiff testified in her deposition that

> in the beginning of all this, for the first month or month and a half, I was under the impression that William Lowe was in charge of our office, that he was the person that we were supposed to report to because there were times when I had been off, I didn't come to work, or I had a doctors appointment or I needed to leave work or this, that, and the other – nobody ever said to me, well, the person . . . that you need to go get approval through is the general manager. . . . William Lowe had the authority to okay everything.
>
> So for about a month and a half, until, I think, I made a request and I was leaving – I had talked to William Lowe and had told him that my kids were in private school and I needed to – I wanted to use my lunch hour to be able to go and pick them up from school and take them home and this, that, and the other. Well, he okayed it, and it went that way for about three weeks. And when Ned [Goble] found out about it – I think he called up to the front office one day looking for me, and they told him I was on my lunch hour, and it was 3:00 o'clock. He said, what's she doing on her lunch hour this late or whatever, and when I came back, you know, he informed me at that point, I am the general manager, and anything that you do or whatever, you need to speak directly to me.

Collier Dep., pp. 74-75. Plaintiff's testimony makes clear that she had a truancy problem. Just within the first six weeks or so of her employment, there were apparently numerous times when she "had been off, . . . didn't come to work, or . . . had a doctors appointment or . . . needed to leave work or this, that, and the other." Her testimony also confirms that she had difficulty reporting to Goble as her supervisor.

Goble's testimony about Plaintiff's poor attitude is well supported by the tone and substance of Plaintiff's angry letter to Goble shortly after her discharge. In that letter, Plaintiff acknowledges her poor performance and blames it on Goble, Eva Howard and everyone else but herself:

8

> To even imply that I was incompetent or unable to effectively perform the duties assigned to me, or even say that I was not able to grasp the moving business, is totally unfair. You were very aware at the early stages of my employment that I was dissatisfied with the training I was receiving from Eva. It was due to your lack of concern, that allowed the problem to continue to exist. . . . If you have any sense of dignity how could you [possibly] accuse me of poor work performance when you know the training I received. It's because you have no character as well as no morals that you could write such trash. People [lose] jobs everyday, for reasons that may be their fault; and some not their fault. In my case I lost my job due to the fact of your poor management skills, as well as Eva. I will not take any responsibility for what [happened] at that job, because you created the environment that presently [exists there].

Collier Dep., Ex. 1.[3] Because her own testimony and her letter to Goble substantially corroborate Defendants' proffered non-discriminatory reasons for discharging her, Plaintiff cannot establish pretext by her own opinion that she did not deserve to be discharged.

Plaintiff's complaint and deposition also suggest an attempt to establish pretext by reference to three statements that she attributes to Goble, which might be interpreted to indicate racial animus on his part. One of these statements is inadmissible, while the other two are insufficient to create a genuine issue of material fact as to pretext.[4] In light of the evidence showing legitimate non-discriminatory reasons for the termination of Plaintiff's employment, the two admissible statements fail to show that a discriminatory reason more likely motivated the decision.

One of the three alleged statements is inadmissible. Plaintiff testifies that Goble's son-in-law, Jessie, told her about about a racially offensive statement that he had heard Goble make:

> Jessie came to me one time during the lunch hour, came up to the front office, and it was the lunch hour time. And he said, you know, he said, Ned asked me what race

---

[3] In her letter, Plaintiff makes no reference to racial discrimination or sexual harassment.

[4] Because they are not tied by context or circumstances to the adverse employment decision at issue in this case, they are not direct evidence of discrimination, but rather circumstantial evidence relevant to the question of pretext. "Language not amounting to direct evidence, but showing some racial animus, may be significant evidence of pretext once a plaintiff has set out the prima facie case." Jones v. Bessemer Carraway Medical Center, 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998). The statements themselves are not sufficient to establish a prima facie case. Id.

>you are. And I'm like, he doesn't know what race I am? And so he said, evidently not. And I said, well, Jessie, what race am I? He said, you're black, aren't you? And I said, yeah. He said, well, that's what I told him, and he said, must have been a nigger in the woodwork.

Collier Dep., p. 83. There is no testimony in the record from Jessie. Plaintiff's testimony regarding Jessie's statement about Goble's statement is hearsay and is inadmissible under Rule 802 of the Federal Rules of Evidence.

Plaintiff's testimony regarding the other two statements is admissible under Rule 801(d)(2), as the statements are party admissions. According to Plaintiff's testimony, the first statement was made early in her employment, when Goble told her he was surprised that American International's CEO, Henry Hicks had hired both Plaintiff and Diane White. Plaintiff testifies that when she asked him what he meant by that statement, Goble replied, "Well, being the fact, you know, that he only has one black in his corporate office down in Forsyth." Collier Dep., p. 80. The third statement was allegedly made later in Plaintiff's employment. Plaintiff testifies that Goble once commented on the smell of a piece of chicken that Plaintiff was heating in the microwave oven and "said something, you know, to the effect of, in a jokingly way, y'all sure love chicken." Collier Dep., p. 83. Although there is nothing in the statement or in its context to indicate any racial connotation, Plaintiff apparently interprets this statement to imply a racial stereotype.

Read together in the light most favorable to Plaintiff, the two statements might provide some evidence that Goble had a degree of animus towards black people. Nevertheless, in light of the lack of a prima facie case of discrimination, the substantial evidence of Plaintiff's poor performance, and the lack of a connection between these statements and any employment actions, they are not sufficient to allow a reasonable fact-finder to determine that discrimination was a more likely reason

for Plaintiff's discharge after six months of employment. Together, the two statements are at best a mere "scintilla" of evidence, not sufficient to defeat a motion for summary judgment.

### 3. Retaliation and Sexual Harassment Claims

Plaintiff's claims for retaliation and sexual harassment are barred by her failure to exhaust administrative remedies. The filing of a charge with the proper administrative authority "is ordinarily a jurisdictional prerequisite to a Title VII action," and the scope of the judicial action is limited to "the scope of the [administrative] investigation that could reasonably be expected to grow out of the initial charges of discrimination." Chandra v. Englehard/ICC, 234 F.3d 1219, 1225 (11th Cir. 2000). In this case, Plaintiff's charge with the Augusta/Richmond County Human Relations Commission charges only that Plaintiff was discharged from her employment because of her race. There is no reference to retaliation or to sexual harassment in the charge. The form Plaintiff used provided boxes for discrimination based on retaliation and sex. These boxes are unmarked, and only the race box is checked. The allegations of retaliation and sexual harassment in Plaintiff's complaint "do not clarify, amplify, or more clearly focus the allegations in the original [administrative] complaint, but rather are allegations of new acts of discrimination." Lambert v. Alabama Dept. of Youth Servs., 150 Fed. Appx. 990, 994 (11th Cir. 2005) (unpublished opinion). Because these charges have never been raised to the appropriate administrative body, they cannot be brought before the Court in this action.

### 4. Title VII and Section 1981 Claims against Defendant Ned Goble

Defendant Ned Goble is entitled to summary judgment with regard to Plaintiff's claims against him under Title VII because he is not a proper defendant under the statutes. "The relief granted under Title VII is against the employer, not individual employees whose actions would

constitute a violation of the Act." Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991). Although Section 1981 permits an action against an individual employee who is involved in an adverse employment decision, Plaintiff's Section 1981 claims against Goble fail for the same reasons that her claims against American International fail. The evidence is insufficient to create a genuine issue of material fact as to discriminatory intent.

**5.     State Law Claims**

In addition to claims under Title VII and Section 1981, Plaintiff's complaint alleges claims under Georgia law for negligence, negligent training and supervision, and intentional infliction of emotional distress. Having granted summary judgment with regard to all claims for which this Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over the remaining state law claims, pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff's state law claims are therefore **DISMISSED**, without prejudice.

**SO ORDERED**, this the 24th day of May, 2006.

S/ C. Ashley Royal
C. ASHLEY ROYAL
United States District Judge

chw